IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NICHOLAS P. S.,[1]

        Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

CIVIL ACTION

No. 20-2360-JWL

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error as alleged by Plaintiff in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.    Background**

Plaintiff protectively filed an application for DIB on September 13, 2017. (R. 19, 180). After exhausting administrative remedies before the Social Security

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the residual functional capacity (RFC) assessed by the ALJ is not supported by substantial evidence and Plaintiff's condition meets or equals Listing 14.09.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla of evidence, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala,

36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past

3

relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court's opinion follows the order of Plaintiff's Social Security Brief.

## II. The RFC Assessed by the ALJ Is Supported by Substantial Evidence

Plaintiff claims the only medical opinions or prior administrative medical findings found persuasive by the ALJ were the prior administrative medical findings of the state agency medical consultants, Dr. Simowitz and Dr. Gernes, and argues, "Neither of these opinions are substantial evidence." (Pl. Brief 20). This is so, in Plaintiff's view because neither physician treated Plaintiff and their opinions were issued more than a year before the ALJ's decision and without review of the complete record, "including the opinions of treating rheumatologist, Dr. Magadan." Id. He argues Dr. Avila's examination and report supports Plaintiff's allegations of disability but was rejected without a legitimate reason, "particularly in light of the fact that Dr. Avila was hired and paid by Defendant." Id. at 20-21. He also argues the ALJ did not give a legitimate reason for rejecting the medical opinion of Plaintiff's treating rheumatologist, Dr. Magadan, and points to record evidence supporting Dr. Magadan's opinion. (Pl. Br. 21-22).

4

The Commissioner argues the ALJ's evaluation of the medical opinions and prior administrative medical findings was reasonable, was in accordance with the applicable regulations, and was supported by substantial evidence. (Comm'r Br. 11-14). He argues the ALJ's RFC assessment "landed in the middle" ground between the opinion of Dr. Magadan and those of Dr. Simowitz and Dr. Gernes. Id. at 11. He points out the regulations for evaluating medical opinions changed for claims filed on or after March 27, 2017 as was the claim in this case and argues the ALJ properly applied the new regulations. Id. at 12-14. He argues that Plaintiff's position before this court is "nothing more than a request that this Court reweigh the evidence in his favor." and "is not a valid argument for remand." Id. at 15.

In his Reply Brief, Plaintiff reiterates much of his argument. He argues the Commissioner's citation to findings of a normal gait to support discounting Dr. Avila's opinion requiring use of a cane is improper post hoc rationalization because the ALJ did not state that was his reason to discount that opinion. (Reply 6). He acknowledges the Commissioner's citation to evidence supporting the ALJ's decision but argues the ALJ did not dispute Plaintiff's argument of weakness or joint abnormalities. Id.

### A.     Standard for Evaluating Medical Opinions and Prior Administrative Medical Findings

The Commissioner promulgated new regulations regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,854, 2017 WL 168819 (SSA Jan. 18, 2017). The new regulations changed the definition of "acceptable

5

medical source" to add licensed audiologists for certain impairments, and licensed Advanced Practice Registered Nurses and licensed Physician Assistants within their licensed scope of practice.  Compare 20 C.F.R. § 404.1502 (2017), with 20 C.F.R. §§ 404.1502, 404.1513 (2016).

In the new regulations, the Commissioner explicitly delineated five categories of evidence including objective medical evidence, medical opinion, other medical evidence, evidence from nonmedical sources, and prior administrative medical findings.  20 C.F.R. § 404.1513 (2019).  The regulations define objective medical evidence as "medical signs, laboratory findings, or both."  20 C.F.R. § 404.1513(a)(1) (2019).  "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."  20 C.F.R. § 404.1513(a)(3) (2019).  "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim."  20 C.F.R. § 404.1513(a)(4) (2019).

The regulation defines "medical opinion" and "prior administrative medical finding:"

> (2) Medical opinion.  A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: …
>
> > (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

\*\*\*

(5) Prior administrative medical finding. A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 404.900) in your current claim based on their review of the evidence in your case record, such as:

(i) The existence and severity of your impairment(s);

(ii) The existence and severity of your symptoms;

(iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;

(iv) Your residual functional capacity;

(v) Whether your impairment(s) meets the duration requirement; and

(vi) How failure to follow prescribed treatment (see § 404.1530) and drug addiction and alcoholism (see § 404.1535) relate to your claim.

20 C.F.R. § 404.1513(a)(4) (2019).

The regulations include a new section entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 404.1520c (2019). That regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including

controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a) (2019). The regulation provides that the SSA will consider each medical source's opinions using five factors; supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a)(c)(1-5) (2019). It provides that the most important factors in evaluating persuasiveness are supportability and consistency. Id.

The regulation explains that the decision will articulate how persuasive the SSA finds all medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(b) (2019). The articulation requirement applies for each source, but not for each opinion of that source separately. 20 C.F.R. § 404.1520c(b)(1) (2019). It requires that the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(2) (2019). The regulation explains that when the decision-maker finds two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," the decision will articulate the other most persuasive factors from paragraphs (c)(3) through (c)(5). 20 C.F.R. § 404.1520c(b)(3) (2019). Finally, the regulation

8

explains that the SSA is not required to articulate how it considered evidence from non-medical sources. 20 C.F.R. § 404.1520c(d) (2019).

The Commissioner explained the new regulations changed the focus for evaluating medical opinions:

> To account for the changes in the way healthcare is currently delivered, we are adopting rules that focus more on the content of medical opinions <u>and less on weighing treating relationships</u> against each other. This approach is more consistent with current healthcare practice.

<u>Revisions to Rules Regarding the Evaluation of Medical Evidence</u>, 82 Fed. Reg. 5,844-01, 5,854, 2017 WL 168819 (SSA Jan. 18, 2017) (emphasis added).

### **B.** **The ALJ's Relevant Findings**

The ALJ assessed this RFC for Plaintiff:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work (lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for six hours out of an eight-hour workday and sit for six hours out of an eight-hour workday) as defined in 20 CFR 404.1567(b) except: He can occasionally climb ramps and stairs, but can never climb ladders, ropes and scaffolds. He can occasionally stoop, kneel, crouch, or crawl. He is limited to frequent, not constant, handling and fingering. He should work in a temperature-controlled environment and should avoid concentrated exposure to pulmonary irritants, unprotected heights, excessive vibration, and hazardous machinery.

(R. 23) (finding no. 5) (bold omitted).

In making his step two finding that Plaintiff has no medically determinable mental impairments the ALJ found both the medical opinions contained in Dr. Jordan's report of a psychological evaluation of Plaintiff, and the prior administrative medical finding of the state agency psychological consultant, Dr. Iskander, are persuasive. <u>Id.</u> at 22.

9

The ALJ found Plaintiff's medically determinable impairments might reasonably cause his alleged symptoms but Plaintiff's allegations "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Id. at 24. He summarized the record evidence regarding Plaintiff's physical impairments, his treatment record, and the medical opinions and prior administrative medical findings. Id. 24-27. In this summary, the ALJ explained his evaluation of the persuasiveness of the medical opinions and prior administrative medical findings regarding Plaintiff's physical functional limitations.

He found Dr. Avila's opinion Plaintiff needed a cane to ambulate "is not persuasive," id. at 25, stating, "There is no evidence in the record that the claimant was prescribed a cane, or that one was medically necessary." Id. Toward the end of his RFC discussion, the ALJ additionally noted, "although the claimant carried a cane, when he attended each of his consultative examinations, there was never any documented need for assistive device to aid ambulation or balance. (R. 27). He found Dr. Magadan's opinion that Plaintiff could only "lift or carry less than 10 pounds, and stand or walk less than two hours out of an eight-hour day" was unpersuasive because "none of the objective physical examination reports or treatment notes weakness, joint abnormalities, or other symptoms causing such functional limitations." Id. at 25. He also noted, however, that Dr. Magadan opined Plaintiff "would be limited in his exposure to temperature extremes, pulmonary irritants, and humidity, [and found] the latter aspect of his opinion is supported by the evidence and partially persuasive." Id. He explained his evaluation of the prior administrative medical findings of the state agency medical consultants:

> In light of the claimant's positive response to treatment and no development of significant complications, I find the opinions of the State [sic] agency medical consultants are persuasive. Fredric Simowitz, M.D. and Marlene Ann Gernes, D.O. reviewed the evidence of record through early 2018 and concluded the claimant could perform light work activity with postural and environmental limitations. The undersigned finds the evidence further supports slightly the more limitation in climbing and temperature, but these opinions are generally supported by the evidence of record.

Id. at 26.

### C. Analysis

Although Plaintiff classifies his argument as being that the RFC assessed is not supported by substantial evidence, his Brief presents the argument that the ALJ erred in evaluating the medical opinions and prior administrative medical findings. Moreover, his argument does not apply the regulations applicable to claims such as that here, which was filed in September 2017. (Pl. Br. 2), (R. 19, 10). His argument that the prior administrative medical findings of Drs. Simowitz and Gernes are not substantial evidence and should not have been given such weight because they neither examined nor treated Plaintiff ignores the new regulations' and is without merit. The new regulations "focus more on the content of medical opinions and less on weighing treating relationships against each other." 82 Fed. Reg. at 5,854. To be sure, the new regulations require an ALJ to <u>consider</u> the factors of supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a)(c)(1-5) (2019). The ALJ here clearly considered the factor of relationship; he specifically noted that Dr. Magadan was Plaintiff's "treating rheumatologist," that Dr. Avila provided a

11

"January 2018 consultative examination" (R. 25), and that Dr. Simowitz and Dr. Gernes were state agency medical consultants who "reviewed the evidence of record through early 2018." (R. 26). Moreover, under the new regulations the ALJ is not to consider the weight of the opinions relative to each other but must articulate <u>how persuasive</u> he finds <u>each</u> opinion to be. 20 C.F.R. § 404.1520c(b) (2019). Moreover, the most important factors considered are supportability and consistency and the ALJ is required to explain in the decision how he "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." <u>Id.</u> Here the ALJ explained he found Dr. Avila's opinion "not persuasive," Dr. Magadan's opinion "unpersuasive" in certain respects and "partially persuasive" in another (R. 25) and he found Dr. Simowitz's and Dr. Gernes's opinions "persuasive." (R. 26). And, his discussion explained his consideration of the supportability and consistency factors in his evaluation of each opinion. <u>Id.</u> at 25-26.

While Plaintiff is correct that Drs. Simowitz and Gernes did not review the complete record, the ALJ did, and it is his responsibility, not the agency's medical consultants' to evaluate the medical opinions and prior administrative medical findings and to assess Plaintiff's RFC, all in light of the complete record evidence. Plaintiff's reliance on <u>Chapo v. Astrue</u>, 682 F.3d 1285 (10th Cir. 2012) without pinpoint citation, is without merit. Most importantly, <u>Chapo</u> was decided in 2012 and applied the old regulations relatively weighing medical opinions, and to that extent does not apply here. 628 F.3d at 1291-93 & n.5 (citing 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) (as effective when the ALJ's decision issued) and noting the ALJ rejected the treating source

12

opinion of Dr. Krause and relied "on the patently stale opinion of Dr. Amin"). Moreover, even if applied here, Chapo would not require a different result. In Chapo, Dr. Amin's opinion was "patently stale" because the record "underwent material changes" due to the deterioration of the plaintiff's condition in the twenty months after Dr. Amin rendered his opinion, and the ALJ did not explain his consideration of those developments. Id. at 1292-93. Here, Plaintiff has pointed to no material changes after the state agency physicians rendered their opinions that the ALJ did not consider and account for.

Plaintiff does not point to factual errors in the ALJ's evaluation of the medical opinions or prior administrative medical findings but argues that the state agency physicians did not review the entire record before formulating their opinions, that Dr. Avila's opinion supports Plaintiff's allegations of disability, and that Dr. Avila's and Dr. Magdan's opinions were rejected without "legitimate reasons;" and he cites to evidence which, in his view supports Dr. Magadan's opinion. However, Plaintiff does not point to record evidence which compels different findings regarding persuasiveness or different findings regarding the functional limitations in the RFC assessed. Elias-Zacarias, 502 U.S. at 481, n.1. Lacking such evidence, Plaintiff's argument is nothing more than a request that the court reweigh the evidence and substitute its judgment for that of the ALJ. This court is without discretion to do so. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.

Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from

13

the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

## III.     Listing 14.09

Plaintiff argues his condition meets the criteria of the Listings for inflammatory arthritis, Listing 14.09B or, alternatively, Listing 14.09D. (Pl. Br. 22-25). The Commissioner argues that the ALJ properly determined Plaintiff's condition does not meet all the criteria for either Listing. (Comm'r Br. 16-19).

### A.     Step Three Standard

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that he considers disabling. 20 C.F.R. § 404.1525(a), see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If a claimant's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling. Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled"). However, a claimant "has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet all of the specified medical criteria' contained in a particular listing." Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)). "An impairment that manifests only some

14

of [the listing] criteria, no matter how severely, does not qualify" to meet or equal the listing. Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing <u>any</u> gainful activity, not just 'substantial gainful activity.'" Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." Yuckert, 482 U.S. at 153. "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

As relevant here, Listing 14.09 requires showing:

14.09 Inflammatory arthritis. As described in 14.00D6. With:

\*\*\*

B. Inflammation or deformity in one or more major joints of an upper or a lower extremity (see 14.00C8) with:

1. Involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and

2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

or

\*\*\*

15

D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

1. Limitation of activities of daily living.

2. Limitation in maintaining social functioning.

3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 14.09.

### B. The ALJ's Findings

As relevant to Listings 14.09B and 14.09D, the ALJ stated these findings:

The severity of the claimant's physical impairments do not meet or medically equal Listing 14.09 (Inflammatory Arthritis). The record does not contain evidence of … [14.09B] inflammation or deformity in one or more peripheral joints with [1] <u>involvement of a body system or organ</u> and [2] constitutional signs or symptoms; … or [14.09D] repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs and <u>marked decrease in ability [1] to perform activities of daily living, [2] social function, or [3] complete tasks due to deficiencies in concentration, persistence and pace</u>. Accordingly, the claimant's rheumatoid arthritis does not meet or equal Listing 14.09.

(R. 23) (individual Listing numbers added for clarity) (emphases added).

### C. Analysis

#### 1. Listing 14.09B

For Listing 14.09B, the ALJ found the evidence does not demonstrate that the Listing 14.09B1 criterion is met, and Plaintiff has not shown that any organ or body system is "involved to at least a <u>moderate level</u> of severity." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 14.09B1 (emphasis added). Plaintiff suggests the ALJ's finding his restrictive lung disease is a "severe" impairment at step two of the sequential evaluation process satisfies this criterion. (Pl. Br. 23). However, Plaintiff's argument ignores the Listing's

16

definition that "severe" as used in these listings "means medical severity as used by the medical community," but "does not have the same meaning as it does when we use it in connection with a finding at the second step of the sequential evaluation process." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 14.00C12. This fact and Plaintiff's argument that his fusing capacity was <u>impaired</u>, his blood system and vocal cords were <u>affected</u>, his range of motion was <u>limited</u>, strength in his lower extremities was <u>somewhat decreased</u>, hand function was <u>decreased</u>, and he had <u>cool knee effusions</u>, does not compel finding a <u>moderate level</u> of severity in any of the limitations asserted.

### 2. Listing 14.09D

For Listing 14.09D, the ALJ found the evidence does not demonstrate a marked limitation in either activities of daily living; social functioning; or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. The Listings define a marked limitation as used in the immune system disorders:

> Marked limitation means that the signs and symptoms of your immune system disorder interfere seriously with your ability to function. Although we do not require the use of such a scale, "<u>marked" would be the fourth point on a five-point scale consisting of no limitation, mild limitation, moderate limitation, marked limitation, and extreme limitation</u>. You may have a marked limitation when several activities or functions are impaired, or even when only one is impaired. Also, you need not be totally precluded from performing an activity to have a marked limitation, as long as the degree of limitation seriously interferes with your ability to function independently, appropriately, and effectively. The term "marked" does not imply that you must be confined to bed, hospitalized, or in a nursing home.

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 14.00I5 (emphasis added).

Although Plaintiff cites certain limitations to support the argument he meets the criterion of marked limitation (Pl. Br. 24-25), the limitations cited are not equivalent to

17

the fourth point on a five-point scale consisting of no limitation, mild limitation, moderate limitation, marked limitation, and extreme limitation.  To be sure, a marked limitation does not require an inability to perform the activities at issue or that one must be confined to bed, hospitalized, or in a nursing home, but the ability to function in the area must be <u>seriously</u> interfered with.  Plaintiff has not shown such serious interference.

Applying the standards presented in <u>Zebley</u>, and understanding the Listings should not be applied expansively, the court finds no error in the ALJ's step three finding that Listing 14.09 is not met or equalled.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated July 1, 2021, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**